NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SOUTHERN ELECTRONICS CO.,
Respondent.

No. 19895.

United States Court of Appeals,
Sixth Circuit.

Sept. 16, 1970.

Leonard M. Wagman, Atty., N.L.R.B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., on brief.

S. J. Milligan, Greeneville, Tenn., for respondent; Milligan, Silvers, Coleman & Fletcher, Greeneville, Tenn., on brief.

Before CELEBREZZE and McCREE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

PER CURIAM.

This is a petition for enforcement of an order of the National Labor Relations Board based upon findings of unfair labor practices arising out of an organizational campaign at respondent Southern Electronics Company's Mosheim, Tennessee plant. Adopting the findings of its Trial Examiner, the Board found the company guilty of violating §§ 8(a) (1) and 8(a) (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a) (1), 158(a) (3). Respondent was ordered to cease and desist from the proscribed conduct, and to reinstate with back pay two employees who had been discharged. 175 N.L.R.B. No. 11 (1969). The company takes exception to the Board's findings and conclusions, and asks us to deny enforcement of its order.

■ *The no-solicitation rule.* The Board found that the company's rule prohibiting solicitation "of any kind on company property during working hours" violated § 8(a) (1). This rule could be construed as barring solicitation during non-working time, such as rest periods or coffee breaks. Rules which prohibit such activity are presumptively invalid under the Act in the absence of special circumstances (which are not claimed to be present here). National Steel Corp., Great Lakes Steel Division v. NLRB, 415 F.2d 1231 (6th Cir. 1969); Campbell Soup Co. v. NLRB, 380 F.2d 372, 373 (5th Cir. 1967). TRW, Inc., TRW Michigan Division v. NLRB, 393 F.2d 771 (6th Cir. 1968), relied on by respondent, is not in point, since it concerns a rule which clearly exempted non-working

time on company property from the operation of a prohibition against solicitation. Accordingly, the Board's order prohibiting the company from issuing and enforcing unlawful no-solicitation rules will be enforced.

*Coercive interrogation.* The Board found that company officials engaged in coercive interrogation of employees concerning union activities. The Trial Examiner and the Board found that foreman Dixon had interrogated employee Wisecarver about the progress of the union organizational drive just three days after employee Ricker had been discharged for allegedly discussing union membership with another employee during work hours in violation of the no-solicitation rule. It is well settled that such interrogation violates § 8(a) (1) when its probable effect is to inhibit union activity. NLRB v. Bin-Dicator Co., 356 F.2d 210, 213–214 (6th Cir. 1966). Here there was evidence from which the Trial Examiner and the Board could conclude that this questioning tended to have such an effect. Accordingly, the Board's order in this respect will be enforced.

*Threat to close the plant.* Respondent also challenges the Board's finding that a company official violated § 8(a) (1) by threatening that the plant would be closed in retaliation if the employees chose to be represented by a union. Employee Wisecarver testified as follows at the Board's hearing:

> [Foreman Dixon] said "Well, if the union did get in we may all be looking for a job;" and I asked him why and he said that if the union did go in the plant would be closed, that the plant would probably be closed; that Mr. Detrick of the plant would not allow a union to go in and that we would probably all be out of a job and he was strongly against it.

Transcript, at 85. Although Dixon testified that he was unable to remember whether he had made such a statement, Transcript, at 258–259, the Trial Examiner and the Board were entitled

to credit the employee's testimony and to resolve the factual discrepancies against the company. The courts will not overturn such a finding if there is, as here, substantial evidence in the record considered as a whole to support it. Dixon's statement as reported by Wisecarver clearly violates § 8(a) (1). NLRB v. Gissel Packing Co., 395 U.S. 575, 618–619, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). As the Supreme Court said, "If there is any implication that an employer may or may not take action solely on his own initiative for reasons unrelated to economic necessities and known only to him, the statement is no longer a reasonable prediction based on available facts but a threat of retaliation based on misrepresentation and coercion, and as such without the protection of the First Amendment." 395 U.S. at 618, 89 S.Ct. at 1942.

*The discharge of Ricker.* Employee Ricker, one of the leading union activists, was fired for allegedly violating the no-solicitation rule which the Board held to be unlawfully broad. As the Board found, a discharge based on such a rule has the natural effect of discouraging protected activity and therefore violates § 8(a) (1). Moreover, there was substantial evidence to support the Board's finding that the company was actually motivated by anti-union animus. The rule had been laxly enforced in the past, and the company suddenly abandoned its three-step "progressive discipline" system to apply the most stringent sanction, discharge, against Ricker, a known union adherent, after his first offense. Under these circumstances, the Board's order requiring reinstatement of Ricker will be enforced.

*The discharge of Wisecarver.* The firing of employee Wisecarver presents the most difficult question in this case. Like Ricker, Wisecarver was a union activist, but he also had a record of tardiness and absenteeism in the weeks preceding his discharge. The immediate cause of Wisecarver's firing was his refusal to sign a reprimand con-

cerning his lateness for a Saturday overtime assignment. The Trial Examiner's conclusion was as follows:

The question then remains whether Detrick would have abandoned the progressive discipline and fired Wisecarver for not signing the reprimand if Wisecarver had not been a union proponent.

Under the circumstances set out above, I find and conclude that Detrick would not have fired Wisecarver if it had not been for the latter's union involvement.

Common sense dictates that Detrick could have followed the progressive discipline system by merely noting on the reprimand that Wisecarver had been given the form and refused to sign it and had been informed that a further breach of the rules would mean a 3-day layoff. Detrick testified that two other persons had been discharged for a high absentee record and that the progressive discipline system had been followed as to them. Why then was it abandoned here? Detrick gave no plausible reason but retreated to a firm position that Wisecarver was fired for high absenteeism and insubordination. The total of the insubordination was Wisecarver's refusal to sign the reprimand form since he felt he had not broken any of the company's rules. The common sense answer was to warn him and make an appropriate notation. Detrick did neither but apparently became incensed and fired Wisecarver.

I do not know whether he fired Wisecarver primarily to rid himself of a union proponent or because he was afraid of being accused of being soft on a union man. In either event Wisecarver's union predilections was [sic] a moving factor in causing Detrick to abandon the progressive discipline and fire him. I believe it is safe to assume that if Wisecarver had not been an open union proponent, he would not have been discharged under these circumstances.

Accordingly, I would conclude and find that Wisecarver's discharge was violative of Section 8(a) (3) and (1) of the Act.

This conclusion, which the Board adopted, is supported by substantial evidence in the record taken as a whole and by applicable law. It is axiomatic that when an employee is fired because of his union sympathies, the discharge is a violation of §§ 8(a) (1) and (8) (3). NLRB v. Whitfield Pickle Co., 374 F.2d 576, 582 (5th Cir. 1967); NLRB v. West Side Carpet Cleaning Co., 329 F.2d 758, 761 (6th Cir. 1964).

The order of the Board will be enforced in full.